O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE A. SANDOVAL,<br><br>            Plaintiff,<br><br>        v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>            Respondent. | Case No. CV 15-2864-KES<br><br>MEMORANDUM OPINION<br>AND ORDER |

Plaintiff Jose A. Sandoval appeals the final decision of the Administrative Law Judge ("ALJ") denying her application for Supplemental Security Income ("SSI").[1]  For the reasons discussed below, the Court concludes that the ALJ did not err in discounting the extreme opinions of a treating psychiatrist, treating physician and a consultative examiner. Accordingly, the decision of the ALJ denying benefits is AFFIRMED.

*/ / /*

_____

[1] Plaintiff is transgender and identifies as a female.  Administrative Record ("AR") 68, 678.

# I.

## BACKGROUND

On November 17, 2011, Plaintiff filed an application for SSI, alleging disability beginning on November 20, 2010, when she was 25 years old.  AR 70, 186-94.  Plaintiff alleges that she is unable to work due to asthma, major depression, AIDS, and insomnia.  AR 205.

On June 12, 2013, an ALJ conducted a hearing, at which Plaintiff, who was represented by counsel, appeared and testified with the assistance of a Spanish language interpreter.  AR 69-86.  A vocational expert ("VE") also testified.  AR 86-90.

On June 26, 2013, the ALJ issued a written decision denying Plaintiff's request for benefits.  AR 49-60.  The ALJ found that Plaintiff had the severe impairments of asthma, sexual reassignment,[2] human immunodeficiency virus ("HIV"), depression, anxiety, and substance abuse.  AR 52.  Notwithstanding her impairments, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work, except she was able to perform work that did not require literacy in English; she must avoid concentrated exposure to dust, fumes, and chemicals; she must avoid public contact; and she was limited to simple tasks.  AR 54.  The ALJ determined that Plaintiff had no past relevant work, but there were jobs that existed in significant numbers in the national economy that she could perform, including the jobs of small products assembler, inspector and hand packager, and housecleaner.  AR 59-60, 86-87.  The ALJ thus found that Plaintiff was not disabled.  AR 60.

/ / /

/ / /

---

[2] Plaintiff indicated that she was taking hormones, but had not had any surgeries.  AR 79.

2

## II.

## ISSUES PRESENTED

The parties dispute whether the ALJ erred in rejecting the opinions of Plaintiff's two treating physicians and a consultative examiner.

## III.

## DISCUSSION

**A.** **The ALJ Did Not Err In Evaluating The Medical Evidence.**

Plaintiff contends that the ALJ improperly evaluated the opinions of three medical sources:  (1) Dr. Konstantinos Tripodis, Plaintiff's treating psychiatrist; (2) Dr. Michael Soles, Plaintiff's treating physician; and (3) Dr. Stephen Erhart, a State Agency psychiatric consultative examiner.  Dkt. 29 at 4-13.  Plaintiff alleges that each medical source provided opinions that supported greater limitations than those found by the ALJ.  Id.

**1.** **Relevant Background.**

a.    Dr. Erhart.

Dr. Erhart performed a psychiatric evaluation of Plaintiff on May 10, 2012.  AR 678-83.  He administered a mental status examination and found multiple well-healed self-mutilation marks on both arms; consistently hesitant and occasionally diffident conduct; repeatedly solipsistic (evidencing lack of awareness of other people's points of view) answers; spontaneous and fluent speech; intact orientation, concentration, registration and recall; subdued mood; restricted affect; no hallucinations or perceptual disturbances; no current suicidal ideation; noteworthy for depression and borderline phenomena; goal directed thought process; and limited insight and judgment. AR 681-82.  He diagnosed Plaintiff with major depression:  single episode, alcohol and methamphetamine dependence in full sustained remission, borderline personality traits, and a GAF score of 60.  AR 682.

He opined that Plaintiff's ability to understand, remember and perform

instructions for simple and complex tasks was intact; her ability to maintain focus and concentration was mildly impaired; her ability to interact with the public, coworkers and supervisor was severely impaired "evidenced by cross sectional resentfulness during interview and a described predisposition to aggression with conflicts;" her ability to comply with job rules "such as safety and attendance" was moderately impaired; and her ability to respond to work pressure in a usual work setting was moderately impaired.  AR 682-83.

        b.     Dr. Soles.

Dr. Soles completed a Physical RFC Questionnaire and a Physician Statement, both dated April 9, 2013.  AR 822-28.  He indicated that he had treated Plaintiff since February 4, 2011.  AR 822, 827.  He diagnosed Plaintiff with AIDS, transgender, depression, history of suicide attempt, and asthma.  AR 822.  He listed Plaintiff's symptoms as "severe depression unable to work [secondary] to stress."  <u>Id.</u>  He identified clinical findings of "cut marks on arms," viral load, and latest T-cell count, and objective findings of AIDS with severe depression, and history of suicide ideation and attempt.  AR 822, 828.  He opined that Plaintiff was incapable of even "low stress" jobs because she "has tried suicide 3 times," and that Plaintiff was unable to work "as we have a lot of difficulty controlling depression."  AR 823, 826.

        c.     Dr. Tripodis.

Dr. Tripodis, a psychiatrist with the Los Angeles County Department of Mental Health, provided treatment records corresponding to Plaintiff's visits.  Those records are summarized as follows:

• 9/12/11:  On Plaintiff's initial visit, she signed a "client care coordination plan."  That plan lists as a goal for Plaintiff to "attend support group in the community for support and symptom management," among other things.  AR 460.  This initial visit also included (1) "diagnosis information" including major depressive disorder, asthma, AIDS and substance abuse (AR

464); (2) an "initial assessment" noting symptoms and history reported by Plaintiff (AR 465-68), (3) a "mental status evaluation" noting initial observations (AR 469-70); (4) an "adult mental health triage" form noting symptoms and history reported by Plaintiff (AR 473-75); and (5) forms related to substance abuse (AR 476-79).  It is unclear what role, if any, Dr. Tripodis played in this initial assessment.

• 9/13/11:  The clinical team determined that Plaintiff's case would be "assigned to Dr. Tripodis for medication services."  AR 522.

• 9/23/11: "Complex Medication Support Service" form completed by Dr. Tripodis.  AR 529, 572.  The form notes "good" adherence to medication, but "poor response to Celexa."  Id.  The plan is to discontinue Celexa and start other medications.  AR 530, 573.

• 11/1/11: "Brief Follow-Up Medication Support Service" form completed by Dr. Tripodis.  AR 528, 571.  The form notes "adherence to medication" is "good," but treatment response is "poor."  Id.  The form also notes "stable client chronic depression" and intent to try different medication. Id.

• 12/6/11: "Brief Follow-Up Medication Support Service" form completed by Dr. Tripodis.  AR 527, 570.  The form notes "adherence to medication" is "good" and "stabilized client."  Id.

• 3/13/12: "Brief Follow-Up Medication Support Service" form completed by Dr. Tripodis.  AR 526, 569.  The form notes "adherence to medication" is "good."  Id.

• 7/3/12: "Brief Follow-Up Medication Support Service" form completed by Dr. Tripodis.  AR 568.  The form notes "adherence to medication" is "good," but treatment response is "poor," so Dr. Tripodis increased the dosage of medication.  Id.

• 8/9/12: "Brief Follow-Up Medication Support Service" form

5

completed by Dr. Tripodis.  AR 567.  The form notes "adherence to medication" and "treatment response" are "good."  Id.

• 10/4/12: "Brief Follow-Up Medication Support Service" form completed by Dr. Tripodis.  AR 566.  The form notes "adherence to medication" and "treatment response" are "good," and patient is "stable."  Id.[3]

In addition to these treating records, Dr. Tripodis completed a Mental RFC Questionnaire, dated May 20, 2013.  AR 817-21.[4]  He indicated that he had treated Plaintiff since September 12, 2011, and saw her every three months.  AR 817.  He diagnosed Plaintiff with post-traumatic stress disorder with psychotic features, major depressive disorder, and assigned a GAF score of 43.  Id.  He noted that Plaintiff was compliant with medication and adhered to appointments, but had to be reminded and prompted of her appointments.  Id.  He listed "clinical findings" of "episodes of depression, auditory hallucinations, visual hallucinations, isolat[ion], feelings of worthlessness, low self-esteem, history of suicide ideation, low energy, racing thoughts, hypervigilance, paranoid thinking, fearful regarding the future, frequent crying spells, flashbacks and intrusive thoughts, fear of being around others."  Id.

He identified Plaintiff's symptoms by checking boxes corresponding to the following:  anhedonia or pervasive loss of interest in almost all activities; appetite disturbance with weight change; thoughts of suicide; feelings of guilt or worthlessness; recurrent and intrusive recollections of a traumatic

---

[3] At the 2013 hearing, Plaintiff testified that her medication "helps … a little." AR 73. Since Plaintiff had stopped seeing Dr. Tripodis by that time, it is unclear who, if anyone, was prescribing anti-depressants for Plaintiff in June 2013. AR 804-08.

[4] Plaintiff chose to discontinue treatment in 2012 and her file was closed in March 2013 due to her lack of participation. AR 804.

experience, which are a source of marked distress; persistent disturbances of mood or affect; paranoid thinking or inappropriate suspiciousness; recurrent obsessions or compulsions which are a source of marked distress; substance dependence; emotional withdrawal or isolation; intense and unstable interpersonal relationships and impulsive and damaging behavior; hallucinations or delusions; deeply ingrained, maladaptive patterns of behavior; vigilance and scanning; pathologically inappropriate suspiciousness or hostility; memory impairment; sleep disturbance; persistent irrational fear of a specific object, activity, or situation which results in a  compelling desire to avoid the dreaded object, activity or situation; and involvement in activities that have a high probability of painful consequences which are not recognized. AR 818-19.

Part of the form asked Dr. Tripodis to evaluate Plaintiff's "mental abilities and aptitudes" needed to do unskilled work.  The form listed 16 skills and gave Dr. Tripodis the choice for each of assigning one of five ratings: (1) unlimited or very good, (2) limited but satisfactory, (3) seriously limited, but not precluded, (4) unable to meet competitive standards (defined on the form as "patient cannot satisfactorily perform this activity independently, appropriately, effectively and on a sustained basis in a regular work setting), and (5) no useful ability to function (defined as "patient cannot perform this activity in a regular work setting).  AR 819.

Of the 16 skills, Dr. Tripodis left most of the rows blank.  The only ratings he assigned were as to the following 6 skills, for all of which he marked "unable to meet competitive standards:"  maintaining regular attendance and being punctual within customary, usually strict tolerances; working in coordination with or proximity to others without being unduly distracted; completing a normal workday and workweek without interruptions from psychologically based symptoms; accepting instructions and responding

appropriately to criticism from supervisors; getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; and dealing with normal work stress. AR 819. For any ratings in the three most limited categories (including "unable to meet competitive standards"), the form asked Dr. Tripodis to "include the medical/clinical findings that support this assessment," but he left that part of the form blank. AR 819.

The form also asked Dr. Tripodis to rate 4 skills associated with semi-skilled or skilled work. AR 820. Dr. Tripodis opined Plaintiff was "unable to meet competitive standards" as to all four: understanding and remembering detailed instructions; carrying out detailed instructions; setting realistic goals or making plans independently of others; and dealing with stress of semiskilled and skilled work. Id. Again, he left blank the portion of the form asking for an explanation. Id.

Finally, the form asked Dr. Tripodis to rate 5 skills associated with "particular types of jobs." Id. Dr. Tripodis indicated that Plaintiff was "unable to meet competitive standards" in the areas of interacting appropriately with the general public and maintaining socially appropriate behavior; had "no useful ability to function" travelling to unfamiliar places; and he left blank any assessment of Plaintiff's ability to use public transportation or maintain basic standards of neatness and cleanliness. Id. Again, he left the portion of the form asking for an explanation blank. Id.

Following these charts, he indicated that Plaintiff does not have "reduced intellectual functioning," but would be absent from work more than four days per month due to her impairments or treatment. AR 820-21. He added that Plaintiff had difficulty concentrating and retaining information due to intrusive thoughts, flashbacks, low energy, fatigue, auditory and visual hallucinations, fear of being around others, and isolation. AR 821.

//

d.    Medical Opinions Compared to Plaintiff's RFC.

Although the ALJ stated that she was giving the opinions of these three doctors reduced weight, her RFC nevertheless incorporates or moots many of their opinions.  For example, the RFC limited Plaintiff to "simple tasks."  This limitation is consistent with a limitation to "unskilled" work, which is defined to mean "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. § 404.1568 (a).  This limitation, therefore, moots any opinions about Plaintiff's difficulties performing tasks associated with skilled or semi-skilled work.

The RFC also limits Plaintiff to jobs in which she can "avoid public contact."  AR 54.  In addition, the hypothetical question posed to the VE included that Plaintiff have only "occasional" interactions with coworkers or others.  AR 86.  The VE testified that the jobs he identified as consistent with Plaintiff's RFC required "less than occasional contact with coworkers and supervisors."  AR 87.  These limitations address opinions that Plaintiff has mild or moderate difficulties in the area of social functioning and coping with stress since social interactions are stressors for Plaintiff.  By restricting Plaintiff to a job involving only simple tasks and minimal social interactions, the RFC does not contemplate that Plaintiff would work in a "regular work setting."  Dr. Tripodis's opinions about Plaintiff's difficulties meeting competitive standards in a "regular work setting" are therefore moot.

Discrediting opinions that were ultimately incorporated into the RFC or are irrelevant to the ALJ's ultimate determination of disability, even if error, is harmless error.  Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where mistake was irrelevant to the ALJ's ultimate disability conclusion).  That said, there are opinions within the reports of these three doctors that are inconsistent with Plaintiff working even under the limitations imposed by the RFC, e.g., (1) Dr. Tripodis's opinion that Plaintiff

9

1  will miss work more than four times each month[5] and (2) Dr. Erhart's opinion
2  that Plaintiff's ability to interact with coworkers or supervisors is "severely"
3  impaired due to "resentfulness" and "a described predisposition to aggression
4  with conflicts."[6]  AR 821, 682-83.  The Court, therefore, in reviewing the
5  ALJ's stated reasons for discrediting the opinions of Drs. Tripodis and Erhart,
6  focuses on the validity of the ALJ's reasons as applied to these two opinions.

7  **2.  Applicable Law.**

8  Three types of physicians may offer opinions in Social Security cases:
9  (1) those who directly treated the plaintiff, (2) those who examined but did not
10 treat the plaintiff, and (3) those who did neither.  Lester v. Chater, 81 F.3d 821,
11 830 (9th Cir. 1995).  A treating physician's opinion is generally entitled to
12 more weight than that of an examining physician, and an examining
13 physician's opinion is generally entitled to more weight than that of a non-
14 examining physician.  Id.  When a treating or examining physician's opinion is
15 not contradicted by another doctor, it may be rejected only for "clear and
16 convincing" reasons.  See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d
17 1155, 1164 (9th Cir. 2008) (citing Lester, 81 F.3d at 830-31).  When it is
18 contradicted, the ALJ must provide only "specific and legitimate reasons" for
19 discounting it.  Id. (citation omitted).  The weight given a physician's opinion

---

21    [5] The ALJ implicitly found that with the limitations set forth in the RFC,
22 Plaintiff would not be absent more than 2 times each month.  AR 86 (VE
23 testified that hypothetical person could not be absent more than twice a month
   and maintain employment in identified jobs).

24    [6] At the hearing, Plaintiff's counsel suggested that a "severe" impairment
25 meant "the individual would basically have almost no ability to interact with
26 coworkers and supervisors."  AR 88.  The VE testified that in any work setting,
   "there would be a requirement for at least some interaction on a daily basis
27 with coworkers and supervisors," but perhaps as little as 10% of the time.  Id.

28

depends on whether it is consistent with the record and accompanied by adequate explanation, the nature and extent of the treatment relationship, and the doctor's specialty, among other things.  20 C.F.R. § 416.927(c)(3)-(6).

### 3.   Analysis.

#### a.   Dr. Soles.

The ALJ gave "very little weight" to the opinion of Dr. Soles that Plaintiff was unable to work due to severe, uncontrolled depression for two reasons:  (1) the opinion was brief and conclusory; and (2) the opinion was on an issue reserved to the Commissioner.  AR 58.  The ALJ noted that Dr. Soles provided very little specific information regarding Plaintiff's symptoms and limitations, and merely concluded as a general matter that Plaintiff was unable to work.  Id.

The ALJ correctly found Dr. Soles's opinion brief and conclusory.  See Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.") (citation omitted).  Dr. Soles did not specify how frequently he saw Plaintiff over the past two years.  AR 822, 827.  He described Plaintiff's symptoms as "severe depression unable to work [secondary] to stress," and he identified clinical findings as "cut marks on arms," viral load, and latest T-cell count.  AR 822, 828.  He did not identify any specific functional limitations, and instead wrote "N/A depression precludes work."  AR 823-24.

The ALJ is correct that a determination of a claimant's ultimate disability is reserved to the Commissioner.  20 C.F.R. § 416.927(d); Thornsberry v. Colvin, 552 F. App'x 691, 692 (9th Cir. 2014) ("[A] doctor's opinion that a claimant is disabled is not itself a medical opinion but an issue reserved exclusively for the Commissioner.") (citing 20 C.F.R. § 416.927(d)(1)).  Contrary to Plaintiff's argument, the ALJ thoroughly

11

1  discussed Dr. Soles' opinion and properly found it inconclusive on the ultimate

2  issue of disability.  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

3  Accordingly, the ALJ gave specific and legitimate reasons for giving Dr.

4  Soles's opinion reduced weight.

5               b.    Dr. Erhart.

6        The ALJ gave "limited weight" to Dr. Erhart's opinion that Plaintiff's

7  social functioning was "severely" impaired for two reasons:  (1) the opinion

8  was "somewhat inconsistent" with Dr. Erhart's report; and (2) the opinion was

9  "somewhat at odds" with the remainder of the record.  AR 57.

10       In finding Dr. Erhart's opinion "somewhat inconsistent" with his report,

11  the ALJ noted that Dr. Erhart's opinion was inconsistent with his GAF score

12  of 60, the abnormalities identified by Dr. Erhart "seemed relatively mild," and

13  the mental status examination documented "largely normal cognitive

14  functioning."  AR 57.  An ALJ may properly reject a medical source opinion

15  that is inconsistent with his report.  See Valentine v. Comm'r Soc. Sec.

16  Admin., 574 F.3d 685, 692-93 (9th Cir. 2009) (contradiction between treating

17  physician's opinion and his treatment notes constitutes specific and legitimate

18  reason for rejecting opinion); Downing v. Barnhart, 167 F. App'x 652, 653 (9th

19  Cir. 2006) ("[A]n ALJ may reject all or part of an examining physician's report

20  if it contains inconsistencies.") (citing Morgan v. Comm'r, Soc. Sec. Admin.,

21  169 F.3d 595, 603 (9th Cir. 1999)).

22       Plaintiff's GAF score of 51-60 indicates moderate symptoms (e.g., flat

23  affect, circumstantial speech, occasional panic attacks) or moderate difficulty

24  in social, occupational, or school functioning (e.g., few friends, conflicts with

25  peers or coworkers).[7]  A merely moderate difficulty with social functioning is

26  _____

27       [7]    American Psychiatric Association, Diagnostic and Statistical

28  Manual of Mental Disorders, 34 (4th ed. 2000).  The ALJ was incorrect in

inconsistent with Dr. Erhart's opinion that Plaintiff's social functioning is so "severely" limited that she has "almost no ability to interact with coworkers and supervisors." Cf., AR 88 and 682-83.

Accordingly, the ALJ set forth at least one sufficiently specific and legitimate reasons for discounting Dr. Erhart's opinions. The ALJ did not err in determining that while Plaintiff's impairments in the area of social functioning limit her to a job with no public contact and less than occasional contact with coworkers and supervisors, they do not preclude Plaintiff from working altogether.

c.   Dr. Tripodis.

The ALJ gave "very little weight" to Dr. Tripodis's opinion that Plaintiff was unable to perform even unskilled work for two reasons: (1) Dr. Tripodis treated Plaintiff only "on a handful of occasions," making his familiarity with Plaintiff's level of functioning "questionable;" and (2) "aside from [Plaintiff's] subjective statements, there is very little in treatment records" to support the "extreme nature" of Dr. Tripodis's opinion. AR 58.[8]

The ALJ's rejection of Dr. Tripodis's opinion on the basis that he had treated Plaintiff only "on a handful of occasions" was improper. The parties

---

stating that a GAF score of 60 is indicative of "mild" symptoms. AR 57; see also Chase v. Colvin, 2014 U.S. Dist. LEXIS 128206 at *10 n.5 (N.D. Cal. Sept. 12, 2014) ("A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment. The score ranges from zero to 100, and it serves as a subjective determination that represents the clinician's judgment of the individual's overall level of functioning. A GAF score of 51 to 60 indicates only moderate difficulty in functioning.") (internal citations omitted).

[8] The ALJ discredited Plaintiff's testimony about the disabling nature of her symptoms because Plaintiff gave inconsistent statements about the reason her prior employment at Party City ended, among other reasons. AR 56.

13

agree that Dr. Tripodis saw Plaintiff seven times between September 2011 and October 2012.  Dkt. 29 at 9, 14-15.  Dr. Tripodis saw Plaintiff for complex medication support service for major depressive disorder.  AR 526-30, 566-73.  Dr. Tripodis was part of a clinical team at the Los Angeles County Department of Mental Health that included social workers with whom Plaintiff interacted more frequently, who discussed Plaintiff's medication-related questions with Dr. Tripodis, and whose notes were presumably available to him.  AR 522.

The ALJ provided no basis for her assumption that Dr. Tripodis did not form a longitudinal picture of Plaintiff's psychiatric impairments over those seven visits, which occurred over 14 months.  See 20 C.F.R. § 416.927(c)(2)(i) (a treating physician's opinion should be afforded great weight so long as the physician has seen the claimant "a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment").

The Court next considers the ALJ's rejection of Dr. Tripodis's opinion on the basis that there was "very little" in the treatment records, aside from Plaintiff's subjective reports, to support Dr. Tripodis's opinion that Plaintiff would miss more than four days of work each month because of her psychiatric impairments or treatment.[9]  Dr. Tripodis failed to explain the basis of his opinion concerning Plaintiff's excessive absenteeism.  He may be basing it on Plaintiff's (1) need to attend medical appointments, (2) desire to avoid

_____

[9] The ALJ found that Plaintiff had the severe psychiatric impairments of depression, anxiety and substance abuse.  AR 52.  Plaintiff admitted to using methamphetamines, marijuana, and drinking "a lot" of alcohol during the claimed period of disability and while receiving treatment from Dr. Tripodis.  AR 84-85, 800.  Dr. Tripodis, however, opined that in 2013, (i.e., after his treating relationship with Plaintiff ended) that  none of Plaintiff's functional limitations were attributable to substance abuse.  AR 821.

workplace stressors, (3) fatigue rendering Plaintiff physically incapable of going to work, (4) inability to understand or remember the need to go to work, or (5) inability to drive or use public transportation to get to work.

If Dr. Tripodis's rationale was either nos. (1), (3), or (4), then the ALJ correctly determined that his opinion is not supported by his own treating records.  The record contains no information concerning the anticipated schedule for Plaintiff's future appointments, and it seems unlikely that appointments could not be scheduled so as to avoid conflict with working hours most of the time.  After all, "Depression is very common and many people work with it."  Clark v. Comm'r of Soc. Sec., 2014 U.S. Dist. LEXIS 117630 at * 14 (E.D. Cal. Aug. 22, 2014).  With regard to fatigue, "drowsiness" and "dizziness" are potential side effects of medications Dr. Tripodis prescribed in 2011, but not in 2012.  Cf., AR 531 and AR 574.  Nothing in the treating records suggests that Plaintiff is so fatigued that she cannot get out of bed when motivated to do so.[10]  She is, for example, able to attend medical appointments, group therapy sessions, and meetings with her social worker.  AR 492.  She was able to go to Lancaster with a friend.  AR 560.  She goes out to lunch with friend Juan Rodriguez.  AR 215.  With regard to understanding and memory, Dr. Tripodis opined that she has does not have "reduced intellectual functioning" and has "good" adherence to her prescribed medications.  AR 821, 566.  While she may need reminders concerning sporadic medical appointments, that fact does not support an opinion that she would miss work more than four times a month because she would be unable to understand or remember the need to go to work Monday through Friday.

---

[10] At the hearing, when Plaintiff indicated that she did not "have the desire" to leave her house, the ALJ explained that lack of motivation is not a basis for collecting disability benefits.  AR 72.

With regard to avoiding workplace stress, the treating records have ample evidence that Plaintiff responds poorly to stress and finds interacting with others stressful. See, e.g., AR 793. Dr. Tripodis's opinions, however, concern Plaintiff's functional limitations in a "regular work setting," whereas the ALJ limited Plaintiff to work involving only "simple" tasks with no contact with the public and less than occasional contact with coworkers or supervisors. There is no opinion in the record from Dr. Tripodis or any other medical source that Plaintiff would miss work more than four times a month even if her work environment were limited to no contact with the public and less than occasional contact with coworkers or supervisors.

Finally, with regard to transportation, Dr. Tripodis did not offer any opinion as to whether Plaintiff could use public transportation, choosing to leave that row of the form blank. AR 820. It does not logically follow that travel to work would be travel to an "unfamiliar" place, since Plaintiff would be travelling to the same location repeatedly and would acquire familiarity. The ALJ did not err in discounting a doctor's opinion for lack of support when the doctor chose to leave a relevant field blank.

Accordingly, by citing lack of support from his own treatment records, the ALJ gave a specific and legitimate reason for discrediting Dr. Tripodis's opinion that Plaintiff would miss work at least four times a month.

## IV.

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

Dated:   May 24, 2016                _____

KAREN E. SCOTT
United States Magistrate Judge

16